PACKARD CLEVELAND MOTOR CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9935.   Promulgated November 13, 1928.

*H. A. Mihills, C. P. A.*, for the petitioner.
*J. Arthur Adams, Esq.*, for the respondent.

120

## OPINION.

VAN FOSSAN: The petitioner contends that the collection of the deficiency in tax due for the period from June 1 to December 31, 1918, is barred by the statute of limitations because no waiver was ever executed extending the statutory period for collection, the waiver of March 3, 1925, relating solely to the assessment of tax. Petitioner's return for 1918 was filed June 14, 1919. The assessment was made in March, 1924, or within five years after the filing of the return, and was timely, irrespective of the waiver. Petitioner, however, contends that, assuming the assessment was timely made, the collection of the tax is barred. The period for the assessment and collection of the tax not having expired before the enactment of the Revenue Act of 1924, enacted June 2, 1924, section 278(d) of that Act became operative and extends the time for collection for six years from the date of the assessment. *Art Metal Works*, 9 B. T. A. 491; *United States* v. *Russell*, 22 Fed (2d) 249; *American Creosoting Co.*, 12 B. T. A. 247. In this situation the filing of the waiver was immaterial.

The second and major issue relates to the computation of income, it being contended by petitioner that its method of selling and financing the sale of trucks and cars was founded essentially on the installment or deferred-income basis, while respondent has treated the same as a closed transaction when petitioner received from the Commercial Company the full unpaid price of its trucks and cars.

In our findings of fact we have set out step by step petitioner's sale and payment procedure. As between petitioner and its purchasers the sales originally may have been on an installment basis. This, however, would not be an end of the matter. Pursuant to previous arrangements, petitioner immediately assigned and transferred the notes and sold, assigned and transferred the mortgages to the Commercial Company, receiving in cash the full unpaid purchase price of the car or truck. Thereupon petitioner closed the purchaser's account on its books. Only in the event of a repossession or refinancing was the account again opened and then the precise pro-

cedure originally followed was usually reenacted. Under this set of facts we are convinced that upon the receipt of the full remaining purchase price of the truck or car petitioner received income in that amount. *Grace T. Mytinger*, 4 B. T. A. 896. Though the transaction may have been an installment sale originally, when the Commercial Company paid the petitioner the full balance of the account and assumed the obligation of collecting from the purchaser, so far as petitioner was concerned, the sale became a closed transaction. The Commercial Company did not act as the petitioner's agent in collecting. It had bought all of petitioner's rights under the note and mortgage and thereafter acted in its own sole behalf.

In support of its position petitioner points to the fact that it guaranteed payment of the notes and might be, and in a considerable number of instances was, obliged to respond to the Commercial Company as an endorser on the paper. We do not deem this fact to be of controlling weight. Though the possibility of default was in contemplation it was not established as a surety when the notes were sold and, in fact, every reasonable precaution was taken by petitioner before making a sale to forfend against such a contingency. The treatment of the sale on petitioner's books argues strongly against petitioner's contention.

As an alternative contention petitioner urges that it was error for the respondent to tax them on the full amount of cash received for the reasons that petitioner was contingently liable as an endorser and the notes were not worth their full face value when received. It urges further that only the endorsement with recourse by petitioner gave them such value. The evidence does not convince us that under the facts and circumstances surrounding the sale the notes were not worth their face. The working arrangement between petitioner and the Commercial Company was very intimate. The notes were sold immediately on receipt for full face value. It is not reasonable to assume that petitioner would have made the sale in the first place or have guaranteed payment of the notes to the Commercial Company had it not believed them good for their face value. Petitioner's practice was to find a man who appeared to be honest and industrious and possessed of enough cash to make the initial payment. It often secured for him hauling contracts before the sale was made. The unpaid balances of the notes were secured by chattel mortgages. The record and all reasonable inference therefrom do not support the petitioner's contention.

*Judgment will be entered for the respondent.*